UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL MONTADOR, Executor
and Estate Trustee of the Estate
of STEVEN R. MONTADOR, Deceased,

              Plaintiff,

    v.

NATIONAL HOCKEY LEAGUE and
NATIONAL HOCKEY LEAGUE BOARD OF
GOVERNORS,

              Defendants.

No. 21 C 06820

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Montador, representing the estate of his deceased son, Steven Montador, brought this suit in the Circuit Court of Cook County against Defendants, the National Hockey League and the National Hockey League's Board of Governors (collectively "NHL"). The NHL removed the case to this Court, and Plaintiff has filed a motion to remand the case to state court. For the reasons stated herein, Plaintiff's motion is granted.

## Background

Steven Montador played hockey in the NHL from 2001 until his retirement in 2012. Two years after he retired, at the age of thirty-five, he passed away. A post-mortem neuropathological examination of Montador's brain showed that he had suffered from chronic traumatic encephalopathy. Montador's estate, represented by his father, Paul Montador ("Plaintiff"), sued the NHL in 2015, claiming that various

symptoms, and ultimately his death, were at least partially caused by numerous concussions he suffered while playing hockey. Among other claims, Plaintiff alleged that the NHL negligently promoted violence by its players and failed to warn his son of the risks of brain injury that the sport entails, in violation of the Illinois Survival Act, 755 Ill. Comp. Stat. 5/26-6 and the Illinois Wrongful Death Act, 740d Ill. Comp. Stat. 180/1.

Judge Lee dismissed most of Plaintiff's claims in the first suit as completely preempted by Section 301 ("§ 301") of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") because those claims were "inextricably intertwined" with provisions of collective bargaining agreements ("CBAs") that governed Montador's employment relationship with the NHL. *See Montador v. Nat'l Hockey League*, No. 15 C 10989, 2020 WL 11647730, at *4 (N.D. Ill. Nov. 24, 2020) ("*Montador I*"). Judge Lee concluded, however, that two of Plaintiff's claims—that the NHL unreasonably promoted a "culture of violence," and that the NHL implicitly misrepresented to Montador that his head trauma was not serious—were not preempted, because the alleged tort claims were based on common law obligations that existed independently of the CBAs. *Id.* at *6. Judge Lee declined to exercise supplemental jurisdiction over those claims and dismissed them without prejudice. *Id.* at *7.

Plaintiff reasserted the two surviving claims in a new lawsuit, which he filed in the Circuit Court of Cook County. The NHL removed the case to this Court on grounds that, this time, these claims too are completely preempted under § 301. Plaintiff filed a motion to remand the case back to state court, which the Court now

considers. The case was initially assigned to Judge Lee, and has now been reassigned
to this Judge.

## Legal Standard

Removal is governed by 28 U.S.C. § 1441, which provides, "any civil action
brought in a State court of which the district courts of the United States have original
jurisdiction, may be removed by the defendant or the defendants, to the district court
of the United States." A plaintiff who contests the asserted jurisdictional basis may
file a motion to remand the case to state court. 28 U.S.C. § 1447(c). "The party
seeking removal has the burden of establishing federal jurisdiction, and federal
courts should interpret the removal statute narrowly, resolving any doubt in favor of
the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*,
577 F.3d 752, 758 (7th Cir. 2009). If at any time the federal court finds that it has no
subject-matter jurisdiction, the case must be remanded. § 1447(c).

## Analysis

The NHL asserts that the Court has federal question jurisdiction over this case
because the LMRA completely preempts Plaintiff's state law claims. Under the well-
pleaded complaint rule, federal question jurisdiction "exists only when a federal
question is presented on the face of the plaintiff's properly pleaded complaint."
*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Complete preemption is a
narrow exception to this rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).
When a defendant successfully asserts that a federal statute completely preempts a
plaintiff's state law claims, "any claim purportedly based on that pre-empted state

3

law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. 386, 393 (1987); *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013).

Section 301 of the LMRA "provides a federal rule for contract disputes between employers and labor organizations or between different labor organizations." *Crosby*, 725 F.3d at 800. As an exclusive remedy for such disputes, § 301 completely preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394.

Complete preemption under § 301 applies only when the determination of the state law claims is "inextricably intertwined" with the operative CBA. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). "Factual overlap between a state-law claim and a claim one could assert under a CBA is not necessarily sufficient." *Crosby*, 725 F.3d at 800. Therefore, the Court must "look beyond the face of plaintiff's allegations and the labels used to describe her claims and . . . evaluate the substance of plaintiff's claims." *Id.*

In *Montador I*, Judge Lee concluded that the exact claims at issue here—the NHL's purported "culture of violence" and misrepresentations concerning the long-term effects of players' head traumas—were not completely preempted because they were grounded in common-law duties, not duties created by the CBAs. 2020 WL 11647730, at *5–6 (citing *Boogaard v. Nat'l Hockey League*, 211 F. Supp. 3d 1107, 1112 (N.D. Ill. 2016) (holding the same with respect to analogous claims against the

4

NHL)); *see also Carcillo v. Nat'l Hockey League*, 529 F. Supp. 3d 768, 779–80, 783 (N.D. Ill. 2021) (holding that claims that the NHL promoted fighting were not preempted because they were grounded in common law duties). Other courts have held similarly. *See, e.g., Dent v. Nat'l Football League*, 902 F.3d 1109, 1123 (9th Cir. 2018) (negligent misrepresentation claim concerning side effects of prescription drugs used to treat football players' injuries involved fact questions outside the scope of CBAs).

Undeterred by Judge Lee's two prior rejections of its preemption argument with respect to these claims, the NHL contends that preemption applies this time because Plaintiff's new culture-of-violence and misrepresentation claims are really just disguised versions of the claims the Court held to be preempted in *Montador I*. That is, the NHL asserts that Plaintiff's culture-of-violence claims are actually claims that the NHL breached its duty of care by not changing the playing rules in the CBAs to prohibit fighting, and Plaintiff's misrepresentation claims are predicated on a duty of care arising from the CBAs to fully inform players of the risks of head trauma.

These arguments fail. Turning first to the culture-of-violence claims, Plaintiff's complaint alleges that the NHL not only permitted, but actively promoted and glorified, fighting between players because fighting is popular with hockey fans and therefore profitable for the league. These allegations are at most tangential to the terms of the CBA and are certainly not "inextricably intertwined" with them. *Lueck*, 471 U.S. at 213. As Judge Lee explained in *Montador I*, the NHL's duty not to unreasonably expose players to gratuitous violence arises out of the common law, not

the CBAs. 2020 WL 11647730, at *6. Stated differently, under Illinois law "every person owes a duty of ordinary care to guard against injuries to others." *Karas v. Strevell*, 884 N.E.2d 122, 129 (Ill. 2008). The NHL has not provided any good reason this Court should question Judge Lee's findings in *Montador I* that a court need not interpret the CBAs to decide the "existence or scope" of the NHL's duty not to affirmatively create an unreasonable risk of injury. 2020 WL 11647730, at *6 (quoting *Boogaard*, 211 F. Supp. 3d at 1111).

Indeed, in *Boogaard*, 211 F. Supp. 3d 1107, the court rejected an argument nearly identical to the one the NHL makes here. In that case, the court found that many of the claims by the estate of a deceased NHL player were completely preempted by § 301 of the LMRA. *Id.* at 1109–1110. The plaintiff filed a motion for leave to file a second amended complaint, which included claims that the NHL "actively promoted violence," and which the NHL opposed. *Id.* at 1111. The NHL argued, like here, that these culture-of-violence claims were "merely repackaged versions of the other, preempted claims" because they contained allegations that the NHL "failed to eliminate violence" and had a duty to protect the plaintiff from the risks of play. *Id.* (cleaned up). The court disagreed. It held that, even if the claims that the NHL promoted violence contained some similar allegations to the preempted claims, they were not predicated on the NHL's voluntarily assumed duties in the CBA, and instead alleged that the NHL took "active and unreasonable steps" to promote fighting. *Id.* at 1112.

6

Similarly here, the substance of the allegations underlying Plaintiff's culture-of-violence claims is that the NHL affirmatively encouraged fighting. Plaintiff cites many of the same facts as did the plaintiff in *Boogaard*—highlighting, for example, how the NHL promoted films and highlight reels featuring the league's "greatest hits" and licensed video games that included fighting in gameplay—in support of his claim that the NHL actively encouraged a climate of violence. *Compare, e.g.*, Compl. at Law ¶¶ 39–42, *Montador v. Nat'l Hockey League*, No. 2021 L010483 (Cir. Ct. Cook Cnty. Oct. 26, 2021), ECF No. 18-1, *with Boogaard*, 211 F. Supp. 3d at 1112.

To be sure, the NHL is correct that the culture-of-violence claims reference the NHL's failure to prohibit fighting, which is governed by the CBA. But read in context, the allegations that the NHL did not ban fighting merely support Plaintiff's claims that the NHL violated its common-law duties by unreasonably promoting a culture of violence. They are not grounded in any separate obligation that the NHL has voluntarily assumed by virtue of any CBA provision. Nor does the NHL point to any language in the CBAs suggesting as much.[1] Therefore, the culture-of-violence claim is not "inextricably intertwined" with the CBAs, and it is not preempted.

The Court finds the NHL's preemption argument as to the misrepresentation claims equally unconvincing. The NHL attempts to recast Plaintiff's misrepresentation claim as a claim that the NHL breached its obligation to disclose

---

[1]    The NHL also suggests that the current claims are preempted because Plaintiff has recycled many of the paragraphs from his previous complaint into the instant version. But this is irrelevant, because the preemption analysis focuses not on "the face of plaintiff's allegations and the labels used to describe [his] claims," but instead on the "substance" of the claims. *Crosby*, 725 F.3d at 800.

the information it knew about the long-term risks of head trauma. While it is true that Plaintiff's misrepresentation claims contain allegations of non-disclosure, the lion's share of the facts Plaintiff offers in support suggests that the NHL affirmatively misled players by communicating through its conduct that head injuries were not serious.

As Plaintiff sees it, the NHL's glorification and promotion of violence itself implicitly represented that head trauma could not cause severe long-term complications. So too did the NHL's decades-long representation that it was comprehensively studying the long-term health effects of head injuries. The NHL's commitment to study the issue, Plaintiff claims, created in players a false sense of security. And Plaintiff alleges that, when the NHL released its study, the results downplayed the health consequences of head trauma and continued to mislead players.

In holding that a similar misrepresentation claim was not preempted, the *Boogaard* court explained that although the complaint referenced the fact that the NHL did not warn the plaintiff about the risks associated with head trauma (which by itself would be preempted), the misrepresentation claim centered on other facts outside the assumed duties in CBA. Namely, the *Boogaard* plaintiff alleged many of the same facts as Plaintiff here—that the NHL "made a show" of studying head trauma, and that it misrepresented the results of its study upon its release, which "actively and unreasonably harmed" players by causing them to rely on misinformation and to continue fighting during gameplay. 211 F. Supp. 3d at 1112.

As in *Boogaard*, here the misrepresentation claims against the NHL center on its affirmative conduct, not its failure to warn. Accordingly, the misrepresentation claims also survive preemption.

Because the Court concludes that the LMRA does not preempt any of Plaintiff's claims, federal subject-matter jurisdiction is not available on the basis of complete preemption. And because neither side raises any other basis for federal question jurisdiction, the Court finds that it does not have subject-matter jurisdiction over this dispute.[2] Remand is, therefore, mandatory, and the Court need not consider the propriety of the proposed amended complaint.

## Conclusion

For the reasons set forth above, Plaintiff's motion to remand is granted. The Clerk is directed to remand this case forthwith to the Circuit Court of Cook County. Civil case terminated.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 16, 2022

---

[2] As Judge Lee noted in *Montador I*, diversity jurisdiction does not exist because Steven Montador was a Canadian resident at the time of his death, and the NHL is a limited liability company ("LLC") with seven members having their principal places of business in Canada. *See* 2020 WL 11647730, at *6; *see Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 635 (7th Cir. 2021) (for diversity-of-citizenship purposes, LLCs are citizens of every state in which a member is domiciled); 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]").

9